UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF WISCONSIN
MILWAUKEE DIVISION

| | |
|---|---|
| DAVID BOGATZKI, Individually and on Behalf of All Others Similarly Situated,<br><br>        Plaintiff,<br><br>  vs.<br><br>CAWLEY & BERGMANN, LLP and CAVALRY SPV I, LLC,<br><br>        Defendants. | Case No.: 17-cv-77<br><br>**CLASS ACTION COMPLAINT**<br><br>**Jury Trial Demanded** |

## INTRODUCTION

1. This class action seeks redress for collection practices that violate the Fair Debt Collection Practices Act, 15 U.S.C. § 1692 *et seq*. (the "FDCPA").

## JURISDICTION AND VENUE

2. The court has jurisdiction to grant the relief sought by the Plaintiff pursuant to 15 U.S.C. § 1692k and 28 U.S.C. §§ 1331 and 1337. Venue in this District is proper in that Defendants directed their collection efforts into the District.

## PARTIES

3. Plaintiff David Bogatzki is an individual who resides in the Eastern District of Wisconsin (Milwaukee County).

4. Plaintiffs is a "consumer" as defined in the FDCPA, 15 U.S.C. § 1692a(3), in that Defendant sought to collect from him a debt allegedly incurred for personal, family or household purposes.

5. Defendant Cawley & Bergmann, LLP ("Cawley") is a multi-state law firm with a principal place of business located at 117 Kinderkamack Road, Suite 201, River Edge, NJ 07661.

6. Cawley is engaged in the business of a collection agency, using the mails and telephone to collect consumer debts originally owed to others.

7. Cawley is engaged in the business of collecting debts owed to others and incurred for personal, family or household purposes. Cawley is a debt collector as defined in 15 U.S.C. § 1692a.

8. Cawley collects debts, allegedly owed Cavalry SPV I, LLC ("Cavalry").

9. Defendant Cavalry is a limited liability company with its principal place of business located at 500 Summit Lake Dr Ste 400, Valhalla, NY 10595.

10. Cavalry is engaged in the business of a collection agency, in that it purchases and receives assignment of consumer debts that are in default at the time Cavalry acquires them.

11. The FDCPA treats assignees as debt collectors if the debt sought to be collected was in default when acquired by the assignee, and as creditors if it was not. 15 U.S.C. § 1692a(6)(F)(iii); *Schlosser v. Fairbanks Capital Corp.*, 323 F.3d 534, 536 (7th Cir. 2003), *citing Bailey v. Sec. Nat'l Serving Corp.*, 154 F.3d 384, 387 (7th Cir. 1998); *Whitaker v. Ameritech Corp.*, 129 F.3d 952, 958 (7th Cir. 1998); *Pollice v. Nat'l Tax Funding, L.P.*, 225 F.3d 379, 403-04 (3d Cir. 2000); *Wadlington v. Credit Acceptance Corp.*, 76 F.3d 103, 106-07 (6th Cir. 1996); *Perry v. Stewart Title Co.*, 756 F.2d 1197, 1208 (5th Cir. 1985).

12. Cavalry uses third party debt collectors and attorneys, including DRS, to collect allegedly defaulted debts that have been assigned to Cavalry.

13. A company meeting the definition of a "debt collector" under the FDCPA (here, Cavalry) is vicariously liable for the actions of a second company collecting debts on its behalf. *Janetos v. Fulton Friedman & Gullace, LLP*, 825 F.3d 317, 325-26 (7th Cir. 2016) (assignees

who are "debt collectors" are responsible for the actions of those collecting on their behalf); *citing Pollice*, 225 F.3d at 404-05.

14. Cavalry, directly or indirectly or both, is a debt collector under the above arrangement and is jointly responsible for DRS's actions. 15 U.S.C. § 1692a(6).

**FACTS**

15. Plaintiff entered into a consumer transaction with "Citibank, N.A." ("Citibank") for a personal credit card.

16. Prior to October 15, 2016, Plaintiff's account with Citibank went into default.

17. Prior to October 15, 2016, and after Plaintiff's account with Citibank was in default, Citibank sold or otherwise assigned the ownership rights to Plaintiff's account to Cavalry.

18. On or about October 15, 2016, Cawley mailed a debt collection letter to Plaintiff regarding an alleged debt, allegedly owed to "Cavalry SPV I, LLC." A copy of this letter is attached to this complaint as Exhibit A.

19. Upon information and belief, the alleged debt that Cawley was attempting to collect was a credit card account, used only for personal, family or household purposes.

20. Upon information and belief, Exhibit A is a form letter, generated by computer, and with the information specific to Plaintiff inserted by computer.

21. Upon information and belief, Exhibit A is a form debt collection letter used by Cawley to attempt to collect alleged debts.

22. Upon information and belief, Exhibit A is the first written communication that Cawley sent to Plaintiff regarding the alleged debt to which Exhibit A refers.

3

23. Exhibit A contains the following text:

> Unless you, the consumer, within thirty days after receipt of this notice, dispute the validity of the debt or any portion thereof, this office will assume this debt is valid. If you, the consumer, notify us in writing within the thirty-day period that the debt, or any portion thereof, is disputed we will obtain verification of the debt or a copy of a judgment against you and a copy will be mailed to you by our office. Upon your written request within the thirty-day period, we will provide you with the name and address of the original creditor, if different from the current creditor.

24. The above language in Exhibit A is the debt validation notice that the FDCPA requires to be included with the initial written communication to the consumer. 15 U.S.C. § 1692g.

25. Exhibit A also contains the following settlement offer:

| Single Payment Option: | 3 Month Payment Plan: |
|---|---|
| ➢ Take **$1,492.82** off the balance.<br>➢ Pay **$2,239.22** no later than **11/21/16**.<br>➢ Your account will be considered **"Settled in Full"** after we post your payment.* | ➢ Take **$1,119.61** off the balance.<br>➢ Pay over 3 equal monthly installments of **$870.81**.<br>➢ First Payment due no later than **11/21/16** and every 30 days thereafter.<br>➢ Your account will be considered **"Settled in Full"** after we post your final payment.* |

26. The above offers require the consumer to make a payment "no later than 11/21/2016" if the consumer wants to take advantage of it. Exhibit A.

27. Thus, in order to accept the settlement offer, Exhibit A requires Plaintiff to make a payment within 37 days of the date of the letter. Exhibit A.

28. If Exhibit A was actually mailed on October 15, 2016, the 30 day validation period identified in Exhibit A would end only a few days before the settlement offer in Exhibit A expires. *See* 15 U.S.C. § 1692g(a).

4

## FDCPA Violations

29. <u>Exhibit A</u> is confusing to the unsophisticated consumer because it demands a payment within the validation period or shortly thereafter, but does not explain how the validation notice and settlement "deadline" fit together. *Bartlett v. Heibl*, 128 F.3d 497, 500 (7th Cir. 1997) ("In the typical case, the letter both demands payment within thirty days and explains the consumer's right to demand verification within thirty days. These rights are not inconsistent, but by failing to explain how they fit together the letter confuses.").

30. The unsophisticated consumer would have no idea how to both seek verification of the debt and preserve the settlement offer in <u>Exhibit A</u>.

31. The consumer needs time to process the information contained in an initial debt collection letter before deciding whether to dispute, pay or take other action. This is the point of the 30 day period in 15 U.S.C. 1692g(a).

32. Prior to deciding whether to dispute a debt, a consumer may have to sort through personal records and/or memories to try to remember if the debt might be legitimate. She may not recognize the creditor – debts are freely assignable and corporations, especially banks, often change names.

33. Moreover, once a consumer sends a dispute in writing, the creditor is under no obligation to provide verification in any specific amount of time, or even to provide verification at all, so long as the debt collector ceases collection efforts until it does so. *Jang v. A.M. Miller & Assocs.*, 122 F.3d 480, 483 (7th Cir. 1997) ("Section 1692g(b) thus gives debt collectors two options when they receive requests for validation. They may provide the requested validations and continue their debt collecting activities, or they may cease all collection activities.")

5

34. The § 1692g validation period lasts for 30 days. It is the consumer's right to *request* verification until the end of the thirty day period. If the request is not made until the end of the thirty day period, the verification request would not be processed, researched by the creditor, and returned to the consumer until long after settlement offer payment deadline has expired. The consumer would be left with no time to review the verification and determine whether to accept the settlement offer.

35. The unsophisticated consumer would have no idea how to both seek verification of the debt and preserve the settlement offers in Exhibit A. It is likely that the settlement offer would expire before the debt collector provides verification. The consumer would be left with little or no time to review the verification and determine whether to accept the settlement offer.

36. The effect of the settlement offer in the initial written debt communication is to discourage or prevent consumers from exercising their validation rights.

37. Defendant did not include explanatory language in Exhibit A, *see, eg. Bartlett*, 128 F.3d 497, 501-02 (7th Cir. 1997).

38. In order to preserve the settlement offer in the event of a written dispute, and to preserve the 30-day validation period itself, any explanatory language should make clear that a dispute will extend the settlement offer while the debt collector is in the process of complying with its obligation to verify the debt.

39. Plaintiff was confused by Exhibit A.

40. The unsophisticated consumer would be confused by Exhibit A.

41. Plaintiff had to spend time and money investigating Exhibit A and the consequences of any potential responses to Exhibit A.

6

Case 2:17-cv-00077-JPS    Filed 01/18/17    Page 6 of 10    Document 1

42. Plaintiff had to take time to obtain and meet with counsel, including traveling to counsel's office by car and its related expenses, including but not limited to the cost of gasoline and mileage, to advise Plaintiff on the consequences of Exhibit A.

43. The FDCPA presumes that violations cause injury to consumers. Congress authorized an award of statutory damages for violations. 15 U.S.C. § 1692k(a).

44. Moreover, Congress has explicitly described the FDCPA as regulating "abusive practices" in debt collection. 15 U.S.C. §§ 1692(a) – 1692(e). Any person who receives a debt collection letter containing a violation of the FDCPA is a victim of abusive practices. *See* 15 U.S.C. §§ 1692(e) ("It is the purpose of this subchapter to eliminate abusive debt collection practices by debt collectors, to insure that those debt collectors who refrain from using abusive debt collection practices are not competitively disadvantaged, and to promote consistent State action to protect consumers against debt collection abuses").

45. The FDCPA creates substantive rights for consumers; violations cause injury to consumers, and such injuries are concrete and particularized. *Quinn v. Specialized Loan Servicing, LLC*, No. 16 C 2021, 2016 U.S. Dist. LEXIS 107299 *8-13 (N.D. Ill. Aug. 11, 2016) (rejecting challenge to Plaintiff's standing based upon alleged FDCPA statutory violation); *Lane v. Bayview Loan Servicing, LLC*, No. 15 C 10446, 2016 U.S. Dist. LEXIS 89258 *9-10 (N.D. Ill. July 11, 2016) ("When a federal statute is violated, and especially when Congress has created a cause of action for its violation, by definition Congress has created a legally protected interest that it deems important enough for a lawsuit."); *Church v. Accretive Health, Inc.*, No. 15-15708, 2016 U.S. App. LEXIS 12414 *7-11 (11th Cir. July 6, 2016) (same); *see also Mogg v. Jacobs*, No. 15-CV-1142-JPG-DGW, 2016 U.S. Dist. LEXIS 33229, 2016 WL 1029396, at *5 (S.D. Ill. Mar. 15, 2016) ("Congress does have the power to enact statutes creating legal rights, the

invasion of which creates standing, even though no injury would exist without the statute," (quoting *Sterk v. Redbox Automated Retail, LLC*, 770 F.3d 618, 623 (7th Cir. 2014)). For this reason, and to encourage consumers to bring FDCPA actions, Congress authorized an award of statutory damages for violations. 15 U.S.C. § 1692k(a).

## COUNT I – FDCPA

46. Plaintiff incorporates by reference as if fully set forth herein the allegations contained in the preceding paragraphs of this Complaint.

47. The statement on Exhibit A that payment is due "no later than 11/21/2016" conflicts with and overshadows the debt validation notice, in that it demands a payment within the validation period or shortly thereafter, but does not explain how the validation notice and settlement "deadline" fit together. 15 U.S.C. § 1692g; *Bartlett*, 128 F.3d at 500.

48. Exhibit A is confusing, deceptive, and/or misleading to the unsophisticated consumer.

49. 15 U.S.C. § 1692g(b) states, in part:

(b) **Disputed debts**
…
Any collection activities and communication during the 30-day period may not overshadow or be inconsistent with the disclosure of the consumer's right to dispute the debt or request the name and address of the original creditor.

50. 15 U.S.C. § 1692e provides, in relevant part: "A debt collector may not use any false, deceptive, or misleading representation or means in connection with the collection of any debt."

51. 15 U.S.C. § 1692e(10) prohibits: "The use of any false representation or deceptive means to collect or attempt to collect any debt or to obtain information concerning a consumer.

52. Defendant violated 15 U.S.C. §§ 1692e, 1692e(10) and 1692g.

8

## CLASS ALLEGATIONS

53. Plaintiff brings this action on behalf of a Class, consisting of (a) all natural persons in the State of Wisconsin (b) who were sent a collection letter in the form represented by Exhibit A to the complaint in this action, (c) seeking to collect a debt for personal, family or household purposes, (d) allegedly owed to Cavalry SPV I, LLC (e) between January 18, 2016 and January 18, 2017, inclusive, (f) that was not returned by the postal service.

54. The Class is so numerous that joinder is impracticable. On information and belief, there are more than 50 members of the Class.

55. There are questions of law and fact common to the members of the class, which common questions predominate over any questions that affect only individual class members. The predominant common question is whether the Defendants complied with 15 U.S.C. § 1692e, 1692e(10), and 1692g.

56. Plaintiff's claims are typical of the claims of the Class members. All are based on the same factual and legal theories.

57. Plaintiff will fairly and adequately represent the interests of the Class members. Plaintiff has retained counsel experienced in consumer credit and debt collection abuse cases.

58. A class action is superior to other alternative methods of adjudicating this dispute. Individual cases are not economically feasible.

## JURY DEMAND

59. Plaintiff hereby demands a trial by jury.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff requests that the Court enter judgment in favor of Plaintiff and the Class and against Defendants for:

(a) actual damages;

(b) statutory damages;

(c) attorneys' fees, litigation expenses and costs of suit; and

(d) such other or further relief as the Court deems proper.

Dated: January 18, 2017

**ADEMI & O'REILLY, LLP**

By: /S/ John D. Blythin
Shpetim Ademi (SBN 1026973)
John D. Blythin (SBN 1046105)
Mark A. Eldridge (SBN 1089944)
Denise L. Morris (SBN 1097911)
3620 East Layton Avenue
Cudahy, WI 53110
(414) 482-8000
(414) 482-8001 (fax)
sademi@ademilaw.com
jblythin@ademilaw.com
meldridge@ademilaw.com
dmorris@ademilaw.com

10